# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

SHELEKA YOUNG o/b/o M.A.G.L.F.,

        Plaintiff,

-vs-

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

        Defendant.

DECISION AND ORDER

16-CV-6477-CJS

---

## APPEARANCES

For Plaintiff:        Kenneth R. Hiller, Esq.
        Timothy Hiller, Esq.
        Law Offices of Kenneth Hiller
        6000 North Bailey Avenue, Suite 1A
        Amherst, NY 14226
        (716) 564-3288

For the Commissioner:        Catharine Louise Zurbrugg, Esq. (on brief)
        Joanne Jackson Pengelly, Esq.
        Social Security Administration
        Office of General Counsel
        26 Federal Plaza, Room 3904
        New York, NY 10278
        (212) 264-2536

        Kathryn L. Smith, A.U.S.A.
        United States Attorney's Office
        100 State Street, Fifth Floor
        Rochester, NY 14614
        (585) 263-6760

## INTRODUCTION

**Siragusa, J.** Sheleka Young ("Young") brings this action on behalf of her minor child ("M.A.G.L.F.") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")

denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Both the Commissioner and Young have filed motions for judgment on the pleadings. Pl.'s Mot., May 26, 2017, ECF No. 13; Comm'r's Mot., Sep. 25, 2017, ECF No. 18. The parties have filed memoranda in support of their motions, and replies to each other's. For the reasons stated below, the Court grants Plaintiff's motion for judgment on the pleadings, ECF No. 13 and denies the Commissioner's cross-motion for judgment on the pleadings, ECF No. 18, reversing the Commissioner's decision that the claimant is not disabled, and remanding the case for a rehearing.

## PROCEDURAL HISTORY

Young filed an application for SSI benefits on behalf of M.A.G.L.F., a child under the age of 18, on November 19, 2012. She claimed that M.A.G.L.F. is disabled because of attention deficit hyperactivity disorder ("ADHD"). R. 127. The Social Security Administration denied her initial application, and on June 11, 2014, Young and M.A.G.L.F. appeared *pro se* before an Administrative Law Judge ("ALJ") for a hearing.

On August 8, 2014, the ALJ issued a written decision finding M.A.G.L.F. not disabled and therefore not eligible for SSI. R. 7–21. The ALJ's determination became the final decision of the Commissioner on July 23, 2015, when the Appeals Council denied Young's request for review. R. 1–3.This action followed.

## FACTUAL BACKGROUND

The June 11, 2014, hearing took place in Rochester, New York. Young testified that M.A.G.L.F. was born on July 7, 2004, making her just about ten years old at the time. Young further testified that M.A.G.L.F. was attending school in the fourth grade and had

not skipped any grades, but that she has a 504 plan. R. 36. Another witness at the hearing, Karl Robinson, also provided the ALJ with M.A.G.L.F.'s evaluations by a teacher, by a psychiatrist, along with her disciplinary history. R. 37–39. Upon receipt of the disciplinary history paper, the ALJ asked if M.A.G.L.F.'s insubordinate and disruptive behavior was "getting better, worse, or staying about the same in the last couple of years?" R. 40. M.A.G.L.F. responded, "Same," and Young replied, "I want to say it'd be like same." R. 40. Young said that she was told M.A.G.L.F. would be moving on to fifth grade next year. When asked about her home life, Young testified that M.A.G.L.F. had a seven-year-old sister and that she "always like put her hands on her.… Like she could just do the littlest thing, and [M.A.G.L.F.] like pull[s] her hair, or push[es] her." R. 41. Young, in response to a question from the ALJ about M.A.G.L.F.'s extracurricular activities, responded that M.A.G.L.F. "was going to counseling last school, where her counselor was—when—pregnant with leave.… And she was doing the after school program like to help her out, where [sic] her work and stuff like that." R. 42. She further testified that M.A.G.L.F. did not engage in any extracurricular activities out of a concern that she might be explosive, to which M.A.G.L.F. added, "I have angry [sic] issues." R. 43.

Young testified that M.A.G.L.F. takes three medications, one in the morning, one in the afternoon, and another when she comes home to enable her to settle down for the evening. R. 47. She stated that the medications are working, but even so, she is noticing issues. R. 47–48. Young stated further that M.A.G.L.F. was obtaining speech services and that she drools a lot when she talks. R. 49. Young compared M.A.G.L.F. to a three or four year old child, even though she was almost ten. R. 51. The ALJ asked if there was

anything more he needed to know or that the claimant and witnesses thought it was important for him to know. M.A.G.L.F. responded, "School is cool. I get angry." R. 51.

## STANDARDS OF LAW

### *A. Child Disability Standard*

The statutory standard for children seeking SSI benefits based on a disability is as follows:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Social Security Act sec. 1614, 42 U.S.C. §§ 1382c(a)(3)(C)(1).

In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. §§ 416.924 (2014). First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" or combination of impairments. Third, the Commissioner must determine whether the impairment or combination of impairments correspond with one of the conditions presumed to be a disability by the Social Security Commission, that the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924.

### *B. Review of the Commissioner's Decision*

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

4

with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see also Metro. Stevedore Co. v. Rambo,* 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir.1999) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green–Younger v. Barnhart,* 335 F.3d 99, 105–06 (2d Cir. 2003); *see also Mongeur,* 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo* ).

***Federal Rule of Civil Procedure 12(c)***

Under Rule 12(c), the Court may grant judgment on the pleadings where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). A party's motion will be dismissed if, after a review of the pleadings,

5

the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).

**ANALYSIS**

*ALJ's Decision*

In applying the three-step process, the ALJ found that M.A.G.L.F. had not engaged in substantial gainful activity during the period under adjudication; M.A.G.L.F.'s ADHD was a severe impairment, but did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined that M.A.G.L.F. was not disabled under the Act. R. 10–21.

*Young's Assignments of Error*

Young argues that remand is required for two reasons. First, that the Record demonstrates a gap in information concerning M.A.G.L.F.'s psychiatric records from April 2013 through June 2014.[1] Second, that the ALJ improperly relied on medical reports and a teacher evaluation issued just before M.A.G.L.F. experienced "a significant and well documented decline" in her functioning, and further, that the ALJ erred by "interpreting a vague other source opinion from Ms. Spade against M.A.G.L.F. despite her *pro se* status." Pl.'s Mem. of Law 1, May 26, 2017, ECF No. 13-1.

*Alleged Missing Psychiatric Records*

Young argues that the April 2013 through June 2014 "gap in psychiatric records" may reflect a "gap in treatment" or "a lack of development." Pl.'s Mem. of Law 13. The

---

[1] In her brief, Young contended that the gap was from November 2012 through June 2014. At oral argument, she changed her position to the dates above.

Commissioner responds, "[t]here is no evidence that M.A.G.L.F. began psychiatric-specific treatment prior to her June 2014 psychiatric evaluation at Crestwood Children's Center." Comm'r's Mem. of Law 14, Sept. 25, 2017, ECF No. 18-1. In the June 14, 2014, a psychiatric evaluation by Marion Fitzsimmons, Ph.D., NPP, R. 252–56, the medical history gives no indication of prior psychiatric treatment. It mentions that M.A.G.L.F. attended kindergarten and first grade at School Thirty-Three, until the middle of first grade, when she transferred to Discovery Charter School, and attended regular classes for first through fourth grade. R. 253. The report also mentions that M.A.G.L.F. "started meds in 2nd grade," but makes no mention of any prior psychiatric treatment. *Id.*

A report by Family Nurse Practitioner Sandra Coleman dated April 4, 2011, shows that M.A.G.L.F. was taking no medications, and that Ms. Coleman started her on Aderall for ADHD control. In her psychiatric evaluation, consultive examiner Christine Ransom, Ph.D., on January 21, 2013, wrote that M.A.G.L.F. had no prior hospitalizations or outpatient treatment, and that "[s]he is currently being treated with medication by the pediatrician since 2009." R. 246.

Nothing in the Record suggests that the ALJ erred by failing to obtain additional psychiatric treatment records for M.A.G.L.F. Not only did he ask the people who would know best whether M.A.G.L.F. had received any psychiatric or psychological treatment or counseling, Young and M.A.G.L.F., but the medical records he had gave no hint that further counseling, treatment, or evaluation records existed. Young "identifies no specific record that was missing, much less explains how it would have affected her [daughter's] case." *Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 799 (2d Cir. 2013). The Court finds

the ALJ did not err by not obtaining evidently non-existent records of prior psychiatric or psychological treatment.

### *ALJ's Reliance on Allegedly Stale Reports*

Young contends that the ALJ improperly relied on medical reports and a teacher evaluation rendered stale by subsequent events. Pl.'s Mem. of Law 15. She identifies Dr. Ransom's evaluation from January 2013, Ms. Dolgo's January 2013 teacher evaluation, and Dr. Pauporte's February 2013 evaluation. *Id.* She argues that "these opinions clearly came from a time during with a recent increase in M.A.G.L.F.'s medication was temporarily diminishing her symptoms." *Id.*

The Commissioner points out that Young has not identified the domains in which M.A.G.L.F. experienced a marked or extreme impairment, and that the evidence supports the ALJ's determination, essentially, that M.A.G.L.F.'s ADHD symptoms were generally well controlled by medication. Comm'r Mem. of Law 17.

Kristin Spade, a fourth grade teacher, evaluated M.A.G.L.F. in a report dated March 17, 2014. R. 190–93. The report was on a form that listed various areas and asked Ms. Spade to evaluate on a scale from one to four M.A.G.L.F.'s abilities, with one being "No problem" and four being "Extreme." Ms. Spade marked the following areas as a three: Learning New Material, Reading and/or Comprehending Written Material, Comprehension and/or Following Directions, Receptive Language Skills, Recalling and Applying Previously Learned Material, Effective use of Problem Solving Skills, Easily Distracted, Overactivity and Restlessness, and Impulsivity. *Id.* In narrative portions, Ms. Spade wrote the following: "[M.A.G.L.F.] has difficulties using effective problem solving skills with peers and in academic areas at times." R. 190. In the areas of completing tasks and relating to

others, Ms. Spade marked a three in Frustration Tolerance and Maintaining Age-Appropriate Pace, Getting along with Other Children, Making/Keeping Friends, and Ability to Relate/Retell Stories. R. 191–92. She wrote in the narrative portion for these sections that M.A.G.L.F. was not overly aggressive or shy, and that M.A.G.L.F. "and I have a great relationship therefore [she is] not typically [disruptive in the classroom]. However, she can be very disruptive in other classrooms like specials and lunch." R. 192. Ms. Spade wrote that her behavior modification plan consisted of "breaks when needed" and "HUGS program." *Id.* Ms. Spade also marked M.A.G.L.F. as a three in Coordination, writing that she "is very tall and is sometimes 'clumsy' and has poor coordination." R. 192. She noted further that M.A.G.L.F.'s ADHD medication changes her behavior, and would not function the same without accommodation. R. 193. Despite marking areas as a three, Ms. Spade circled "Yes" on the following questions:

> Does the child acquire information in an age-appropriate manner? Does the child attend to tasks in an age-appropriate manner? Does the child complete tasks in an age-appropriate manner? Does the child move about and manipulate objects age-appropriately? Are the child's self-car and physical health functioning age-appropriate?

R. 190–93 (emphasis removed).

The ALJ gave "significant weight" to her opinion "based on her experience teaching children of the claimant's age, her personal interaction with and observation of the claimant and the general consistency of her opinion with the overall medical and educational evidence of record." R. 14. Young argues that the ALJ acted in an adversarial manner by interpreting Ms. Spade's report as support for finding no marked or extreme limitations. Pl.'s Mem. of Law 18.

Young included a chart in her memorandum of law summarizing the disciplinary events in M.A.G.L.F.'s classroom behavior. The chart begins with one incident in October

9

2012, one each in April and May 2014, one in August 2013, three in September 2013, seven in October 2013, five in November 2013, one in January 2014, three each in March and April 2014, and three in May 2014. Pl.'s Mem. of Law 7–10. From this chart, she argues that M.A.G.L.F.'s treatment was evidently not working in 2013 and 2014.

The Court notes that the disposition of seven of the incidents (including October 2012) was that the teacher removed M.A.G.L.F. from the classroom. Eight were resolved with a conference with M.A.G.L.F.; seven with parental notification; two with warnings; two with one-day suspensions out of school; one with a four-day out of school suspension; and one with a seven-day suspension out of school (May 30, June 2, 3, 4, 5, 6, and 12, 2014, all for a May 30, 2014, incident of physical aggression). What is interesting to note is that Ms. Spade is the faculty name associated with the seven-day suspension.

The Court finds error with respect to the ALJ's interpretation and reliance on Ms. Spade's report in support of his determination that M.A.G.L.F. is not disabled. It is unclear why Ms. Spade gave M.A.G.L.F. threes, indicating a marked limitation, in four rating areas, while in the same report, indicating that M.A.G.L.F. was performing at an age-appropriate level. Further, the Court is persuaded that the M.A.G.L.F.'s disciplinary record shows a lengthy out-of-school suspension in May and June of 2014, evidently by Ms. Spade, and no medical records covering that period of time show whether M.A.G.L.F.'s treatment with medication was no longer working. Dr. Fitzsimmons's evaluation dated June 9, 2014, near the end of M.A.G.L.F.'s seven-day suspension from school, shows that the doctor discussed "adding dose of Tenex 0.5 mg to help with PM impulsivity" and to consider "changing AM med back to Concerta…." R. 254. The combination of M.A.G.L.F.'s lengthy out-of-school suspension evidently by the teacher who wrote that

she and M.A.G.L.F. "have a great relationship," R. 192, and the doctor's concern that M.A.G.L.F.'s medication needed adjustment yet again due to "impulsivity" in the afternoons, leads the Court to question the ALJ's reliance on the medial and teacher evaluations that pre-date the series of disciplinary problems that increased starting in October 2013, culminating in the seven-day out of school suspension in May and June 2014.

Young cites to *Cruz v. Sullivan*, 912 F.2d 8 (2d Cir. 1990). There, the Second Circuit noted,

> when the claimant is unrepresented, the ALJ is under a heightened duty "'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,'" *Echevarria*, 685 F.2d at 755 (quoting *Hankerson*, 636 F.2d at 895).

*Cruz*, 912 F.2d at 11. Young also argues that interpreting Ms. Spade's report as consisting of no marked or extreme limitations was similar to what the ALJ did in *Cruz* by assuming that his request to the doctor for evidence in support of the doctor's conclusion that Cruz was disabled sufficiently fulfilled his duty to make "every reasonable effort" to resolve inconsistencies. Young contends that here the ALJ had an affirmative duty to advise her that she should obtain clarification from Ms. Spade (why did she mark so many areas as "three" or "two" but at the same time state that M.A.G.L.F. was performing in an age-appropriate manner), especially knowing that he would interpret her report as supporting a conclusion of no disability. The disciplinary history, which the ALJ had at the hearing, R. 39, undermines the ALJ's conclusion that M.A.G.L.F. could perform satisfactorily when taking her prescribed medication. The ALJ was under a duty to clarify Ms. Spade's conflicting report and ascertain why M.A.G.L.F. incurred a series of disciplinary events even though she was still taking medication to control her ADHD symptoms. The Court finds that the Record does not contain substantial evidence to support the ALJ's conclusion

that M.A.G.L.F. does not suffer from a marked or extreme limitation.

**CONCLUSION**

For the foregoing reasons, the Court grants Young's motion for judgment on the pleadings, ECF No. 13, and denies the Commissioner's cross-motion for judgment on the pleadings, ECF No. 18. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a rehearing. The Court directs the Commissioner to expedite processing on remand.


DATED: November 28, 2017
       Rochester, New York

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge